The claim of the plaintiffs in the court below, is founded upon the theory that the money received by the defendant in pursuance of the decree of the surrogate, as between the parties, belonged to the plaintiffs, it being the product of, or substitute for a note owned by them, and to which the defendant never had acquired any legal or equitable title; and *Page 226 
which should therefore be regarded and treated as money had and received by the defendant, to the plaintiffs' use.
On the part of the defendant it is urged that the plaintiffs, by reason of their neglect to present the note in question to the administrators, in pursuance of their notice calling upon the creditors of the intestate to exhibit their claims, have forfeited their right to this money. Also that the decree of the surrogate adjudging the money in question to be due to the defendant, is a conclusive bar against the plaintiffs' right to it. It is furthermore contended in behalf of the defendant, that as the plaintiffs received the note as collateral security upon the bond of Joseph O. Hasbrouck, they do not occupy the position of bona fide holders so as to preclude a defense by the maker as against the payee; and finally, that as the defendant allowed the note as a proper demand against the estate of his intestate in favor of Joseph O. Hasbrouck the payee, and paid and settled with him for all he was allowed upon it from the assets of his intestate, in good faith, and without any notice or knowledge of the plaintiffs' interest or claim, he is not liable to the plaintiffs or any one else for such money.
I will consider these positions in the order in which they are raised and presented.
And first, as to the laches of the plaintiffs. The revised statutes, vol. 2, pages 88, 89 and 90, §§ 34 to 40 inclusive, and § 42, contain the provisions applicable to the question. Section 34 allows executors and administrators, after the expiration of six months from the granting of letters by the surrogate, to publish a notice to creditors to exhibit their claims with the vouchers thereof, at a place to be specified in the notice, at or before the day therein named, to be at least six months from the day of the first publication of the notice. Section 35 authorizes the executor or administrator to require of persons presenting claims, satisfactory vouchers, and also affidavits of the claimants of the justice of the claims, c. Section 36 authorizes a reference in case the justice of the claim is doubted by the executor or administrator. Section 37 provides for the proceedings in case of a *Page 227 
reference. Section 38 provides that where a claim shall be presented, and shall be disputed or rejected, c. and shall not have been referred, the claimant shall within six months after such dispute or rejection, c. commence a suit for the recovery thereof or be forever barred from maintaining any action thereon,c. Section 39 provides that in case a suit shall be brought upon a claim which shall not have been presented to the executor or administrator, within the six months mentioned in the notice, as directed in § 34, the executor or administrator shall not be chargeable for any assets or moneys that he may have paid in satisfaction of any claim of an inferior degree or of any legacies, or making distribution to the next of kin, before such suit was commenced, c. Section 40 provides that in such action the plaintiff shall be entitled to recover only to the amount of such assets as shall have been in the hands of the executor or administrator, at the time of the commencement of the suit; or he may take judgment for the amount of his claim or any part thereof to be levied and collected of assetts quando acciderint, c. Section 42, allows a creditor who may have neglected to present his claims as aforesaid to recover the same of the next of kin and legatees to whom any assets shall have been paid or distributed.
In the present case, the notice provided by § 34 was given and published by the administrators of Jophat Hasbrouck, deceased, who was the maker of the note in question. The plaintiffs, who were the holders of the note, neglected to present any claim upon it under or within the time prescribed in the notice. But they were not therefore barred from a recovery. They were still the holders of the note, and entitled to prosecute the administrators upon it, notwithstanding any of the provisions referred to; and the only effect of their neglect to present the claim within the six months mentioned in the notice, was to limit and restrict their remedy as respects the fund out of which to satisfy their judgment when obtained. The intestate's estate, if any should be left after paying other debts, would still be liable; and if moneys had been paid to legatees or next of kin by way of distribution, *Page 228 
the plaintiffs could have prosecuted them, and recovered to the extent of the moneys so paid.
The defendant's right to retain the money in question, as between him and the plaintiffs, must depend upon the question which has the superior claim to it, and not upon the question whether the latter have exercised all the vigilance as against the estate of the decedent with a view to collect it, which they might have done. The report of the referee shows distinctly that the money was received by the defendant as being due upon the note, which was at the time held and owned by the plaintiffs. Their delay or negligence gave the defendant no more right to the money, as it seems to me, than the carelessness of the loser of a sum of money, would give the finder, to retain it as against the loser and true owner.
Suppose the estate had turned out just sufficient to pay all the debts of the intestate, including this note, and no more, and the defendant had been allowed on the final settlement, and had actually received, the whole debt, instead of sixty per cent; it would have effectually deprived the plaintiffs of ever collecting any part of it; for, although they might have prosecuted upon it, and taken judgment for execution upon assets quando acciderint,
yet, as the whole estate was exhausted, and no assets could thereafter come to the hands of the administrators, such judgment could be worthless. Whereas, except for the fact that the defendant had received the money, there would have been funds in their hands for the payment of the demand to the plaintiffs. That the effect would be varied in the present case, for the reason that the assets were insufficient to pay the debts, does not, in my judgment, affect the principle, or weaken the force of the illustration.
I repeat, therefore, that the question of the defendant's liability must depend upon whether the money was rightfully received by him as his own; which will be more appropriately considered under another head.
Second. Was the decree of the surrogate adjudging the payment *Page 229 
of this money to the defendant, a legal bar to an action by the plaintiffs to recover it of him?
The statute declares that the final settlement of an account and the allowance thereof by the surrogate, c. shall be conclusive evidence, against all creditors, legatees, next of kin of the deceased, and all persons in any way interested in the estate, upon whom the citation shall have been served, either personally or by publication as before directed, of certain specified facts and of no others, among which is the following: "That the charges "made in such account for moneys paid to creditors, to legatees, "to the next of kin, and for necessary expenses are correct." (2 R.S. 94, § 65.)
It will not be contended that either of the other specifications applies to the present question. Nor does the one recited, in my judgment, have the slightest application to it. The object of the statute was to make certain facts final, after they should be adjudged by the surrogate, as against creditors and others, in favor of the executors or administrators assuch. If this action had been against the defendant in his character of administrator, the plaintiffs would probably be estopped by the decree. But the defendant is sued in his individual capacity, for moneys alleged to be in his hands belonging to the plaintiffs. And I am not aware of any principle, by force of which the decree in this case can be regarded as a bar to the plaintiffs' claim. Suppose the plaintiffs had delivered the note in question to the defendant as their agent in due season, for the purpose of collection, or of receiving a distributive share upon it from the assets of the estate of the maker, and the defendant had treated it as a claim of his own and received in his own name the sixty per cent on the amount; no one would pretend that under such circumstances the decree of the surrogate adjudging the money to be due to him, would protect the defendant against the plaintiffs' action to recover the money thus received. This it seems to me is conclusive to show that the decree of the surrogate possesses no efficacy as a legal bar in the present case, and that the question *Page 230 
of the plaintiffs' right of recovery is an open one, depending entirely upon other principles.
To allow the plaintiffs to sustain the present action, so far from attacking or impeaching the decree, is affirming and sustaining it. The plaintiffs say that the defendant by virtue of a legal and valid decree has received money which legally and equitably belongs to them, and which would be contrary to justice to allow him to retain. If the facts found by the referee justify such allegation, the decree of the surrogate, in my judgment, is not in the way of a recovery.
Third. Did the plaintiffs receive, and have they continued to hold the note on account of which the money in question was received, under such circumstances as to make them bona fide
holders, or to protect them against payments to, or acts done by, the payee. The note bore date March 15th, 1841, payable to Joseph O. Hasbrouck or bearer and was payable April 1st, 1843. On the first day of May, 1841, the payee assigned and delivered it to the plaintiffs with other securities, for the purpose of securing the payment of a bond at the same time given by him to them, and the plaintiff's have ever since held the note. The debt, to secure the payment of which, the note in question was transferred to the plaintiffs, remains unpaid, to an amount greater than that received by the defendant on the note.
According to the case of Manhattan Co. v. Reynolds, (2Hill, 140,) no act of Joseph Hasbrouck, the payee, either of payment or otherwise, made or done after the transfer, could affect the note in the hands of the plaintiffs. The transfer to the plaintiffs did not render them bona fide holders in a commercial sense, so as to preclude a defense existing at the time of the transfer; but it carried a qualified property to the plaintiffs, which neither the payee or any person deriving title from him, had power to divest or affect in any way. The court, in the case referred to, say, "The distinction lies between the transfer of a legal and "an equitable interest in a chose in action. In the latter case, "the debtor may treat with the payee," (assignee?) "until he "has notice; in the former, not." I incline to think the distinction *Page 231 
is sound, and am prepared to adopt the doctrine of the case. It follows that the objection under consideration must fail.
Fourth. Is the defendant entitled to protection, because he allowed the note as a proper demand against the estate of which he was administrator, in favor of the payee and paid him all he was allowed on account of it, from the assets of the estate, in good faith and without notice, c.
If the case warranted the assumption that the defendant had paid the money in question to the payee of the note as a creditor of the estate, in good faith, and had charged the moneys so paid in his account with the estate, in the regular course of administration, the case might be different. The facts as they appear in the referee's report, will not justify any such view of the case.
It appears that "soon after" the letters of administration were granted, Joseph O. Hasbrouck, the payee of the note, presented aclaim in his own name, c. on account of the note and another note of the decedent, and of an account against the decedent, which claim was not contested, but was admitted by the defendant as a just claim against the estate. That defendant advanced to and for the benefit of the said Joseph O. Hasbrouck on account of such claim about the month of June, 1844, $120,67, and in 1845, before July of that year, paid to one Winfield at the request of the said Joseph O. Hasbrouck $130, or thereabouts, under an agreement with the said Joseph O. that such payment was to be deemed an advance and payment of the said claim; and that it was also at the same time agreed by said Joseph O. that he would give the defendant a receipt in full against said claim, the defendant agreeing to apply any balance owing to the said Joseph on such claim, to his credit on defendant's account against him. This is all there is in the case to show that the defendant paid the two sums as administrator, and in the regular course of administration. If it stopped here, it would present, to say the least, a doubtful and suspicious case. In the first place, it is not shown what was the amount of the claim presented upon which the payments were made. It was the note in question, with another note, and an account against Jophat Hasbrouck deceased, *Page 232 
without stating the amount of such other note and the account, or of either of them. The times when the sums were paid is left indefinite. The balance which might remain due on the claim was to be, and was credited by the defendant on book account, and it does not appear what such balance was. In the next place, when the administrator and administratrix rendered their accounts to the surrogate, no charge was made of these payments although an account for expenses and payments was rendered and allowed by the surrogate. And where it distinctly appears, as it does, that the defendant was placed in the list of creditors of the estate on the same footing as other general creditors for the amount, and expressly on account of this very note and entitled to the sixty per cent out of the assets in the hands of himself, as administrator, and the administratrix, in common with other creditors, and that he afterwards received the sixty per cent accordingly, it seems to me there can be no doubt that his claim to the note in question was that of purchaser only, and was so regarded and treated by the surrogate. Assuming then, as I think we are bound to do, that the defendant's only claim to the money in question, was as the purchaser from Joseph O. Hasbrouck of the note in the hands of the plaintiffs, and the legal title to which was in them, did he, under the circumstances, acquire any legal right to the note, or to the money which was the fruits of it, by his purchase from the payee? The question admits of an answer in the negative only. If the note had been payable to Joseph O. Hasbrouck's order, and had been indorsed by him to the order of the plaintiffs, and had been purchased by the defendant on a forged indorsement of the plaintiffs, it is clear, upon the principle of adjudged cases, that he would be liable to pay over to the plaintiffs whatever moneys he should have received on account of the note. (Canal Bank v. Bank of Albany, 1 Hill,
287; Talbot v. Bank of Rochester, Id. 295.) The defendant acquired no more right, to this note, or the money in question, than if he had received it through a forged indorsement. There was a total defect in his title, or rather an entire absence of title to either. The payee of the note could pass no more title than he had himself, *Page 233 
which was none whatever. It follows that the money he received upon it, belonged to the plaintiffs, who should have been allowed to recover it.
The judgment of the general term should be reversed, and that of the special term affirmed.
Judges GARDINER, JEWETT, EDMONDS, GRIDLEY and WATSON, concurred in the conclusions arrived at by Judges JOHNSON and WELLES.
RUGGLES, Ch. J. gave no opinion.
Judgment of the general term reversed, and that of the special term affirmed.